David **BLAKE** and Arlette Blake,

v.

**GREYHOUND LINES, INC., Motor Coach Industries, Inc. d/b/a MCI and Service Master Inc.**

**Civil Action 05–4040.**

United States District Court, E.D. Pennsylvania.

Aug. 17, 2006.

Louis Podel, Weinstein, Leonard & Lebofsky Associates, Philadelphia, PA, for David Blake and Arlette Blake.

Paul C. Troy, Kane Pugh Knoell and Driscoll, L.L.P., Norristown, PA, for Greyhound Lines, Inc.

Mary B. Lipinski, Naulty, Scaricamazza & McDevitt, Ltd., Philadelphia, PA, for Service Master, Inc.

### *MEMORANDUM AND ORDER*

JOYNER, District Judge.

Via the motions now before us, Defendants individually move for summary judgment. For the reasons set forth below, the motion of Defendant Motor Coach Industries, Inc. ("MCI") is granted, the motion of Defendant Service Master Inc. ("SMI") is granted in part and denied in part, and the motion of Defendant Greyhound Lines, Inc. ("GLI") is denied.

### I. Background

Plaintiff, David Blake ("Plaintiff") was an employee of BCA Management Compa-

ny, which supplied laborers to SMI.[1] GLI contracted SMI to clean and maintain GLI's buses.[2] Plaintiff's work for SMI included draining and refilling the lavatory tanks for GLI's buses. Plaintiff had only worked for SMI for a few days when he was injured while attempting to refill a lavatory tank on a bus.

Some of the buses Plaintiff worked on had a lavatory tank refill valve on the side of the bus. Plaintiff was injured when attempting to refill the lavatory tank on a bus that had a refill valve located in the rear of the bus directly above the engine. The buses with the latter configuration are referred to by GLI as G–Model buses, and are manufactured by MCI.

It is GLI's policy that bus engines be turned off other than when it is necessary that they be on for repairs or other procedures. In this instance, SMI employee Alix Pintro ("Pintro") drove a bus into the service bay made available for SMI to carry out its cleaning and maintenance work. At that time, GLI employee Grandville Brown ("Brown") was on the bus taking computer readings. Pintro did not turn off the engine upon pulling in to the service bay, apparently because Brown had not finished taking the readings. Brown finished taking the readings, and exited the bus, but did not turn off the engine.

Plaintiff was responsible for servicing the same bus. Plaintiff was not permitted to turn off the bus. Plaintiff observed, both before and after opening the engine compartment cover, that the engine was running. Plaintiff did not seek assistance in turning off the engine. Plaintiff was aware that the engine contained moving parts, including fan belts, that were dangerous. Plaintiff would not have worked under the hood of his own car if the engine was running.

Towards the middle of the compartment Plaintiff had opened, MCI had placed a warning label, printed in red in all capital letters in English and Spanish, stating:

### WARNING

DO NOT WORK IN ENGINE COMPARTMENT WITH ENGINE RUNNING. WHEN WORKING IN THIS AREA ALWAYS TURN THE "ENGINE RUN" AND "FRONT, REAR START" SWITCHES TO THE "OFF" POSITION. STAND CLEAR OF EXHAUST AND BELTS WHEN REAR STARTING.

(MCI Mot. Ex. H1.) In addition to this warning notice was a graphic representation, also printed in red, showing a hand caught in the belt, with its fingers being severed. (MCI Mot. Ex. H2.)

Nonetheless, Plaintiff believed that he could safely attach a water hose to the refill valve, which was located directly above the engine, approximately six feet off the ground. Plaintiff attempted to attach the hose, but his hand slipped and came in contact with the moving fan belt, resulting in amputation of two of his fingers.

## II. Legal Standard for Summary Judgment

In deciding a motion for summary judgment under Fed.R.Civ.P. 56(c), a court must determine "whether there is a genuine issue of material fact and, if not, whether the moving party is entitled to

---

1. While Plaintiff was technically employed by BCA Management Company, Plaintiff has conceded that SMI was Plaintiff's employer for the purposes of Pennsylvania's worker's compensation laws.

2. The contract between GLI and SMI included a clause in which the parties explicitly agreed to indemnify one another.

judgment as a matter of law." *Medical Protective Co. v. Watkins*, 198 F.3d 100, 103 (3d Cir.1999) (citations omitted). Rule 56(c) provides that summary judgment is properly rendered:

> ... if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Thus, summary judgment is appropriate only when it is demonstrated that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–32, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). An issue of material fact is said to be genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

A party seeking summary judgment bears the initial burden of identifying portions of the record that demonstrate the absence of issues of material fact. *Celotex*, 477 U.S. at 323, 106 S.Ct. 2548. The party opposing a motion for summary judgment cannot rely upon the allegations of the pleadings, but instead must set forth specific facts showing the existence of a genuine issue for trial. *Id.* at 324, 106 S.Ct. 2548; Fed.R.Civ.P. 56(e). "With respect to an issue on which the nonmoving party bears the burden of proof," the movant may satisfy its burden by " 'showing'—that

is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325, 106 S.Ct. 2548. Where the nonmoving party fails to identify specific facts in opposition to the factual assertions and arguments advanced in the motion, the district court is not obliged to "to scour the entire record to find a factual dispute." *See Dawley v. Erie Indem. Co.*, 100 Fed. Appx. 877, 881 (3d Cir.2004) (citations omitted).

## III. Discussion

Plaintiff sued SMI and GLI for negligence, and MCI for strict liability, negligence, and breach of warranty. Plaintiff's wife has also sued all Defendants for loss of consortium.[3] SMI has filed cross-claims against GLI and MCI. GLI has filed cross-claims against SMI and MCI.

### A. SMI's Motion[4]

### 1. Plaintiff's Claims

SMI moves to dismiss Plaintiff's claims on the basis that they are barred by Pennsylvania's Worker's Compensation laws. Plaintiff has decided not to oppose this motion. Therefore, Plaintiff's claims against SMI shall be dismissed.

### 2. GLI's Cross–Claims

SMI also moves to dismiss GLI's cross-claims on the basis that they are barred by Pennsylvania's Worker's Compensation laws. While these laws would generally bar GLI's cross-claims, they provide an exception where the parties have explicitly agreed to indemnify one another.

---

3. Mrs. Blake's claims, because they are contingent upon those of Plaintiff, will also be dismissed to the extent that Plaintiff's claims are dismissed by the attached order.

4. We note that SMI filed its motion in Civil Action Number 05–4108. This case number is no longer valid, as all of Plaintiff's claims

against MCI, SMI, and GLI were consolidated into Civil Action Number 05–4040. Because the parties have clearly received notice of the filings and responded thereto, we will treat them as properly filed, but will order that all documents be transferred to 05–4040.

The contract between GLI and SMI contains an indemnification clause. Thus, SMI has not shown that there is no genuine issue of material fact as to whether GLI may properly pursue claims against it, and we cannot grant summary judgment for SMI on GLI's cross-claims unless we determine that summary judgment is appropriate on all of Plaintiff's claims against GLI. Because, as discussed below, we deny GLI's motion for summary judgment, we cannot dismiss GLI's cross-claim against SMI on the basis asserted in SMI's motion.

## B. GLI's Motion

### 1. Contractor Liability for Sub–Contractor Injury

■ GLI contends that it cannot be liable for injuries to Plaintiff because Plaintiff was employed by an independent contractor working for GLI. GLI asserts that it is a well-settled principle of law that "a contractor has no liability for the injuries of a sub-contractor resulting from work entrusted by the contractor to the sub-contractor." (GLI's Mem. at 3.) GLI relies on *Duffy v. Peterson*, 386 Pa. 533, 126 A.2d 413, 416 (1956). *Duffy*, however establishes only that where a general contractor engages subcontractors to perform parts of his work, landowner-type liability attaches to a particular contractor or subcontractor "for only such harm as is done by the particular work entrusted to him." *Duffy*, 126 A.2d at 416 (explaining the application of Restatement of Torts § 384 where multiple contractors work on the same project). While this concept arguably protects GLI from liability injuries resulting from dangers created by SMI, it does not protect GLI from liability for injuries resulting from GLI's own acts. Plaintiff alleges that a GLI employee was the last to leave the bus in question, and left it running. This is an allegation with

regards to GLI's work, not SMI's. Thus, under the same principle upon which GLI relies, it may be liable for the resulting injury if the facts support the elements of the claim.

### 2. Landowner Liability for Contractor Injury

■ GLI argues that it has no duty to Plaintiff because "when a land owner turns over work to an independent contractor with experience in [sic] know-how, who selects his own equipment and employees, the possessor of land has no further liability in connection with the work to be done." (GLI's Mem. at 4 (citing *Hader v. Coplay Cement Mfg. Co.*, 410 Pa. 139, 189 A.2d 271 (1963)).) GLI again overstates the holding on which it relies.

*Hader* addressed the question of whether a landowner that had relinquished possession of the premises to an independent contractor could be liable for injuries sustained by an employee of that contractor while on the premises. *Hader*, 189 A.2d at 277. The *Hader* court found that "[a]n owner of land who delivers temporary possession of a portion of the land to an independent contractor owes no duty to the employees of the independent contractor with respect to an obviously dangerous condition on that portion of the land in the possession of the contractor." *Id.* The court went on to specifically distinguish cases in which "liability was clearly predicated on the fact that [the landowner] retained control of the electricity which was the instrumentality which caused the accident." *Id.* It was not the "know-how" that made a difference in the outcome of *Hader*—it was the possession and control of the premises and the instrumentality causing the injury.

GLI does not purport to have relinquished possession or control of either the service bay or the bus, and the presence of

GLI's employees on the bus and in the service area seems to belie such a claim. Thus, judgment as a matter of law is not warranted on the asserted basis.

### C. MCI's Motion

MCI moves for summary judgment on Counts II, III, and IV of the Complaint on the basis that Plaintiff has showed no material issue of fact as to the safety of the bus, the adequacy of the warnings, or the Plaintiff's assumption of the risk.

#### 1. Strict Liability and Negligence

Plaintiff asserts that MCI is both strictly liable and negligent based on the design and manufacture of the bus and the warnings attached thereto. (Pl.'s Compl. Counts II and IV.) Under Pennsylvania law, a strict liability claim requires that a plaintiff show that the product was defective, that the defect proximately caused the plaintiff's injury, and that the defect existed at the time the product left the defendant's control. *See Pavlik v. Lane Ltd./Tobacco Exporters Int'l*, 135 F.3d 876, 881 (3d Cir.1998) (citing Rest.2d of Torts § 402A). A product is defective when it is unsafe for its intended use. A plaintiff can show that a product was defective by showing (1) defects in manufacturing; (2) defects in design; or (3) defects due to inadequacy or lack of warnings. *See Habecker v. Clark Equip. Co.*, 36 F.3d 278, 283 (3d Cir.1994) (noting that "the theory of products liability is applied to three types of defects: design, manufacturing, and marketing (warnings)"). A products liability claim based on negligence requires the same showing, but additionally requires the plaintiff to establish that the manufacturer is at fault. *Harsh v. Petroll*, 840 A.2d 404, 416 (Pa.Commw.Ct.2003).

Plaintiff's Complaint alleges that MCI "designed, manufactured, assembled, sold, distributed, and/or maintained" the bus in a "defective condition," and is strictly liable for the resulting injury.[5] (Pl.'s Compl. ¶ 32.) Plaintiff further alleges that MCI "failed to provide warnings adequate to render its motor coach safe for its foreseeable use." (*Id.* at ¶ 34.) Plaintiff's negligence claim encompasses the same alleged wrongdoing. (*Id.* at ¶¶ 40–41.)

#### a. Failure to Warn

MCI contends that no defect existed, because the danger was open and obvious. Where a danger is open and obvious, there is no duty to warn. *Fleck v. KDI Sylvan Pools, Inc.*, 981 F.2d 107, 119 (3d Cir.1992). Whether a danger is open and obvious is an objective inquiry that does not require examination of an individual user's actual knowledge or awareness of the danger. *Id.* (citations omitted). Rather, this inquiry examines whether an ordinary consumer with knowledge common to the community would have knowledge of the danger. *Id.* (quotations omitted). However, " '[a] plaintiff cannot be precluded from recovery in a strict liability case because of his own negligence.' " *Id.* (quoting *Berkebile v. Brantly Helicopter Corp.*, 462 Pa. 83, 337 A.2d 893, 901 (1975)).

MCI argues that the danger of working in the same area as the operating engine, with its visible and audible moving parts, was so obvious that an ordinary person would be aware of the danger, thus making warnings unnecessary. Plaintiff's response does not address this argument, or point to any facts that contravene the con-

---

5. Plaintiff has presented no facts or arguments suggesting that a manufacturing defect occurred.

clusion that the danger was open and obvious.

■ MCI further contends that, even if a warning was necessary, that the warnings given were adequate. To proceed on a failure to warn theory, a plaintiff must establish that 1) a warning was either absent or inadequate, and 2) the user would have avoided the risk had he been advised of it by the seller. *Phillips v. A–Best Prods. Co.*, 542 Pa. 124, 665 A.2d 1167, 1171 (Pa.1995). In addition, "to reach a jury on a failure to warn theory of liability, the evidence must be such as to support a reasonable inference, rather than a guess, that the existence of an adequate warning might have prevented the injury." *Pavlik*, 135 F.3d at 881 (3d Cir.1998).

■ MCI argues that the written and pictorial warnings were sufficient to put a user of the product on notice that working near the engine while it was running could result in having one's hands be injured by the moving belts. Plaintiff responds merely that "warnings are only adequate when the design cannot be made safer." Plaintiff, however, provides no law supporting this conclusion. Rather, the adequacy of the warning is evaluated solely on the basis of whether the warning was inadequate and a better warning would have prevented the injury. *See Phillips, supra.* Plaintiff's response does not identify any facts supporting that the warning was inadequate or that a better warning would have been more effective.

Because Plaintiff has failed to identify any specific facts showing that there is a genuine issue of material fact as to whether the danger was open and obvious or whether the warning provided was adequate, summary judgment is appropriate on Plaintiff's failure to warn claims against MCI, both in strict liability and negligence.

**b. Assumption of the Risk**

■ MCI contends that Plaintiff is barred from recovering on claims of negligent or defective design because he assumed the risk of injury. To avoid liability based on assumption of the risk on either a strict liability or negligence claim, a defendant must "produce evidence that the plaintiff fully understood the specific risk, and yet voluntarily chose to encounter it." *Robinson v. B.F. Goodrich Tire Co.*, 444 Pa.Super. 640, 643–644, 664 A.2d 616 (Pa.Super.Ct.1995) (citations omitted).

MCI argues that Plaintiff's own testimony at arbitration that he would not work on his own car with the engine running, and that he was aware that the moving parts posed a danger, show that he perceived the risk and faced it voluntarily. Plaintiff asserts that because he thought his actions could be done safely, the most that MCI can show is that Plaintiff appreciated the *general* risk of working near the operating engine. Plaintiff relies on *Hadar v. AVCO*, 2005 Pa.Super. 326, 886 A.2d 225, for the proposition that appreciation of a general risk, but not the specific risk encountered, is insufficient. In *Hadar*, the court found that the plaintiff did not appreciate the specific danger where he admitted that he knew that placing his hands near the rollers of the corn husker he operated was dangerous, but did not think that using a long corn stalk to maneuver corn into the rollers posed a risk. *Hadar*, 2005 PA Super 326, 886 A.2d at 229–30.

Neither Plaintiff's response, nor his supplemental reply, however, points to specific facts supporting that Plaintiff believed that he could attach the refill hose safely while the engine was running. Plaintiff's broad characterizations of the "facts" fail to direct the court to any testimony, expert opinion, or other evidence that would support that a genuine issue of material fact

exists. Absent some specific showing of fact, we must conclude that no genuine issue exists as to whether Plaintiff appreciated both the general and specific risks, and thus assumed the risk of injury.

### 2. Breach of Warranty

 Claims for breach of warranty require the same elements as strict liability claims. *Greco v. Bucciconi Eng'g Co.*, 283 F.Supp. 978, 982 (W.D.Pa.1967). Plaintiff did not respond to MCI's motion with regard to breach of warranty, nor has Plaintiff survived summary judgment on the strict liability claims. Thus, summary judgment on the breach of warranty claim is appropriate.

For the reasons set forth above, MCI's motion is granted, SMI's motion is granted in part and denied in part, and GLI's motion is denied pursuant to the attached order.

### *ORDER*

AND NOW, this 17th day of August, 2006, upon consideration of Defendants' individual motions for summary judgment and all responses and replies thereto, it is hereby ORDERED that

(1) Defendant Motor Coach Industries, Inc.'s Motion for Summary Judgment (Doc. Nos. 21, 22) is hereby GRANTED, and Counts II, III, and IV of Plaintiff's Complaint are hereby DISMISSED;

(2) Document Numbers 11, 12, and 13 filed in Civil Action Number 05–4108 shall be TRANSFERRED to Civil Action Number 05–4040;[6]

(3) Defendant Service Master Inc.'s Motion for Summary Judgment (Doc. No. 11 in Civ. A. No. 05–4108) is hereby GRANTED as to Plaintiff, and Plaintiff's claims against Service Master are hereby DISMISSED;

(4) Defendant Service Master Inc.'s Motion for Summary Judgment (Doc. No. 11 in Civ. A. No. 05–4108) is hereby DENIED as to Cross–Claim Plaintiff Greyhound Lines Inc.; and

(5) Defendant Greyhound Lines Inc.'s Motion for Summary Judgment (Doc. No. 19) is hereby DENIED.

---

**6.** Any further pleadings filed in case 05–4108, which was closed by this Court's Order of October 21, 2005 shall be dismissed as moot.